**Terry M. BENNETT, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 90–122.**

District of Columbia Court of Appeals.

Argued June 18, 1991.

Decided Sept. 17, 1991.

Robert M. Hausman, Washington, D.C., for appellant.

Teresa A. Howie, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, Elizabeth Trosman, and Dolan L. Garrett, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, FERREN and FARRELL, Associate Judges.

ROGERS, Chief Judge:

Appellant Terry M. Bennett appeals his conviction by a jury of possession with intent to distribute cocaine, D.C.Code § 33–541(a)(1) (1989), on the ground that the trial judge erred in permitting the government to elicit evidence of appellant's prior arrest (and possible pending trial) for the same offense at the same location only three weeks before the charged offense. Because we are unable to agree with the government that appellant was not substantially prejudiced by this evidence, we reverse and remand for a new trial.

I.

The government's evidence showed that at approximately 7 p.m. on June 21, 1989, Officer Wiggins and Officer Taylor were working undercover in the 400 block of N Street, N.W. As they entered a courtyard, Taylor was approached by Anthony Hunter, and in response to Hunter's questions, Taylor said he was looking for $20 of rock cocaine. Hunter left Taylor and approached Larry Bennett, appellant's brother. Larry Bennett then entered a car where appellant was in the driver's seat and Renee Watts was in the back seat. Following a brief conversation between appellant and his brother, appellant handed his brother a clear plastic packet containing a white rock substance. Larry Bennett put the packet in his waistband. Appellant looked up and saw Officer Wiggins.[1] The

---

1. Officer Wiggins testified that he knew appel-    lant.

brothers engaged in a second brief conversation, and Larry Bennett got out of the car and returned to Hunter and told him "No go."

An arrest team arrived on the scene, and a search of Larry Bennett revealed seven packets of crack cocaine in the crotch area of his pants. Appellant was removed from the car and while he was being patted down and given his *Miranda* rights by Officer Wiggins, he took off, running.[2] As he did, he made a motion with his hands as though he was throwing something to the ground. The police recovered one plastic packet of a white substance from the ground, which tested positive for cocaine. Appellant was apprehended and $298.00 was recovered from him.

Appellant's defense was innocent presence, claiming that he was set up by Officer Wiggins as a result of the animosity between them. Renee Watts, the backseat passenger, testified that Larry Bennett had entered the car and asked appellant where he was going, and appellant had said that he was going home. Ms. Watts claimed that appellant had not passed anything to his brother while his brother was inside of the car, and that after Larry Bennett left the car and had gone into the courtyard, Officer Wiggins came to the driver's side of the car and told appellant to roll down the window and produce his license and registration. Appellant complied, and was ordered out of the car. He was searched three times but nothing was recovered; drugs were found on Larry Bennett. Ms. Watts did not see appellant throw anything on the ground.

On cross-examination, Ms. Watts admitted that she was "very friendly" with appellant, having known him for two years. When the prosecutor inquired whether she was the same Renee Watts who had been arrested on May 31, 1989, in the 400 block of N Street, N.W., her counsel objected on the ground that the answer might incriminate her.[3] At a bench conference, the prosecutor proffered that the arrest was relevant to show Ms. Watts' bias towards Officers Wiggins and Taylor who were the same officers who had participated in her arrest and appellant's arrest in the present case. Appellant's counsel objected on the ground that the witness' prior arrest was irrelevant to her general credibility. The trial judge overruled the objections. Thereafter the prosecutor asked Ms. Watts whether she had been arrested on May 31, 1989, in the 400 block of N Street, N.W. for distribution and possession with intent to distribute drugs, and if so, whether she was arrested with someone else, and who that person was. Ms. Watts answered affirmatively to the first two questions and named appellant as the person with whom she had been arrested. Asked whether "you"—possibly including appellant *and* herself—"have a trial in that case" coming up, she answered yes but denied that she was testifying in an attempt to discredit the two officers in order to help herself in her own trial, claiming that she was testifying to tell the truth.

Appellant testified that his house was around the corner from the 400 block of N Street, N.W., and that on the night in question he had parked his car on N Street on his way home from work. Around 6 p.m. he and Ms. Watts had left his house to drive her home. However, the car would not start, and he spent some time trying to fix it. Officer Wiggins, whom appellant knew from the neighborhood and with whom he did not have a friendly relationship, walked past while he was working on the car, and appellant said "Hi," but the officer did not answer. Later, Larry Bennett got into appellant's car and wanted appellant to drive him around the block because he had seen the police officer. Appellant refused, and his brother left. Appellant denied giving anything to his brother.

2. Appellant, his brother, and Anthony Hunter were arrested; Ms. Watts was not arrested.

3. The trial judge appointed counsel for Ms. Watts since the prosecutor's cross-examination concerned her prior arrest on drug charges and her answers had the prospect of being incriminatory.

Shortly thereafter, Officer Wiggins asked appellant for his license and registration and for permission to search the car. According to appellant, he was searched several times. After the money was found on him, Wiggins asked appellant where he got it and when appellant said "You know I got a job," Wiggins told him to shut up and slapped him with the money. Wiggins then searched inside appellant's brother's pants, and found a package with eight rocks. Appellant was thereafter subjected to a strip search in the car but nothing was found. Wiggins told appellant he had a big mouth, and to sit in the car. Shortly afterwards Wiggins came back and told appellant that he was going to be arrested. Appellant and his brother protested that appellant had done nothing. Appellant ran from the police, denied throwing anything to the ground, and claimed that the police kicked and hit him in the face when they caught him.[4]

In rebuttal, Officer Wiggins denied that appellant had said hello to him prior to his arrest or that appellant was searched three times and made to pull down his pants in the car; he also denied that the police had beat or kicked appellant.

Prior to closing arguments, after discussion of the instructions, appellant's counsel moved for a mistrial on the ground that the prosecutor's questioning of Ms. Watts had elicited information that appellant had a prior arrest and was awaiting trial, and that information was highly prejudicial.[5] The judge, noting that defense counsel had not objected to the question about appellant's prior arrest, denied the motion, con-

cluding that the probative value of the evidence "certainly completely outweighed the prejudicial value."

## II.

■ Appellant contends that the trial judge erred in denying a mistrial because the prosecutor's introduction of evidence of appellant's prior arrest for the same crime in the same place substantially prejudiced him. He maintains that the defense evidence, particularly Ms. Watts' testimony, was sufficient to raise a reasonable doubt about appellant's guilt, and that the trial judge's error deprived him of a fair trial. The government responds that the prosecutor's single question referring to appellant's prior arrest, "although better left unasked," resulted in no substantial prejudice requiring a mistrial because (1) the inquiry about his prior arrest was consistent with his defense that he had been framed by Officer Wiggins, (2) jurors know that some arrests are unfounded and that not all arrestees are guilty, and (3) appellant was impeached with a prior weapons conviction.

When defense counsel moved for a mistrial citing the cross-examination of Ms. Watts, the judge denied the motion after finding that "the probative value [of the questioning] . . . completely outweighed the prejudicial impact." Because the government does not defend that ruling as it relates to the testimony about appellant's drug arrest, we proceed immediately to the issue of whether appellant suffered substantial prejudice.[6] The threshold question

---

4. On cross-examination appellant was impeached with a 1989 conviction for carrying a dangerous weapon. The trial judge immediately instructed the jury that it could consider appellant's prior conviction only in evaluating his credibility as a witness, and not as evidence of his guilt.

5. The prosecutor responded that his questioning for bias was proper and that defense counsel also represented appellant in the other case and therefore knew that appellant had been arrested with Ms. Watts. Defense counsel repeated that there was no evidence that the same police officers were involved in both arrests. The prosecutor responded that he had advised de-

fense counsel that Ms. Watts and appellant were codefendants and that Ms. Watts would be asked about the prior arrests if she took the witness stand.

6. The government does argue that its questioning of Ms. Watts about her own arrest was proper to establish her bias, since the officers who arrested appellant on the present occasion had purportedly arrested her in the earlier instance. In view of our disposition of the appeal, we need not decide this question. We note two things, however. First, it is doubtful whether the government established satisfactorily the predicate of its theory, i.e., that the same officers made both arrests—much less that Ms.

to be decided, however, is whether appellant adequately preserved the issue for review.

During the cross-examination of Ms. Watts, defense counsel objected to the prosecutor's proposed question regarding Ms. Watts' prior arrest. After the trial judge overruled the objection, the prosecutor proceeded to ask Ms. Watts' about her prior arrest and in the course of doing so also asked who had been arrested with her. Defense counsel did not immediately object nor object after Ms. Watts answered that appellant was with her. However, the next day defense counsel moved for a mistrial on the grounds that the evidence of appellant's prior arrest was highly prejudicial. The government intimates, without expressly saying so in its brief, that a plain error standard of review should apply since defense counsel failed to interpose a contemporaneous objection to the question regarding Ms. Watts' arrest with appellant.

We need not decide whether the defense objection to the prosecutor's proposed line of questioning about Ms. Watts' prior arrest was sufficient to preserve the objection to the discrete question about appellant's prior arrest with Ms. Watts. Defense counsel made a reasonably timely objection by moving for a mistrial the next day. The trial judge was thereby presented with the opportunity to consider lesser measures of mitigation even if he determined that a mistrial was not required. *See Douglas v. United States*, 488 A.2d 121, 132 (D.C.1985); *Fields v. United States*, 396 A.2d 522, 528 (D.C.1978) (citation omitted).

Accordingly, our review of the court's error is for substantial prejudice, and the question is whether we can say "with fair assurance, after pondering all that has happened without stripping the erroneous action from the whole that the judgment was not substantially swayed by the error." *Mathis v. United States*, 513 A.2d 1344,

1348 (D.C.1986) (quoting *Hammill v. United States*, 498 A.2d 551, 554 (D.C.1985)). In determining whether the errors caused substantial prejudice, the court

> must assess the gravity of the misconduct, the relative strength of the government's case, the centrality of the issue affected, and any mitigating actions taken by the court, all the while giving due deference to the decision of the trial judge, who had the advantage of being present not only when the alleged misconduct occurred, but throughout the trial.

*(Charles) Lee v. United States*, 562 A.2d 1202, 1204 (D.C.1989).

The risk from the admissibility of a prior arrest of the defendant is that the "the jury may infer from the prior criminal conviction that the defendant is a bad man and that he therefore probably committed the crime for which he is on trial." *Fields, supra*, 396 A.2d at 527; *see (Charles) Lee, supra*, 562 A.2d at 1204. This risk is greatest when, as here, the crime charged and the prior arrest involve the same offense. *Fields, supra*, 396 A.2d at 527 ("[t]he risk of jury misuse of other crimes evidence is at its greatest when ... the crime charged and the crime used to impeach the defendant are similar"). Moreover, appellant's prior arrest occurred only three weeks earlier at the same location as his present arrest. The risk of an inference of propensity in these circumstances is unavoidable. Nonetheless, that risk might have been diminished had the court, in response to appellant's mistrial motion, instructed the jury to disregard the question and answer; but no such ameliorative steps were taken.

The government suggests that appellant was not prejudiced since the inquiry about his prior arrest was consistent with his defense that he had been framed by Officer Wiggins. This suggestion hinges on the assumption that appellant opened

Watts recalled their identity. *See, e.g., Jones v. United States*, 516 A.2d 513, 517–18 & n. 4 (D.C.1986). Second, the prosecutor argued Ms. Watts' arrest in closing argument to the jury along lines even the government does not de-

fend on appeal, *i.e.,* that Ms. Watts was testifying to help herself in her upcoming trial. Thus the cross-examination of Ms. Watts about her arrest itself appears to have had little probative value.

the door to this type of evidence. The record is to the contrary. When the trial judge, in response to the prosecutor's objection, advised defense counsel during her cross-examination of Officer Wiggins about his prior official relationship with appellant that such questioning would open the door for the prosecutor to inquire about prior arrests, defense counsel conferred with appellant and withdrew the question.[7] Thus, while the defense strategy may have been to show animosity between appellant and Officer Wiggins, the strategy did not encompass the admission of prior arrests. Moreover, even if defense counsel initially had such a strategy, she abandoned it and thereby, consistent with the trial judge's warning, closed the door for admission of appellant's prior arrest.

Furthermore, the prosecutor's questions to Ms. Watts about her impending trial implied that appellant was also awaiting trial on the prior charges. This also effectively disposes of the government's suggestion that appellant was not prejudiced by the evidence of his prior arrest since jurors know that not all people who are arrested are guilty; a pending trial would indicate that the prosecutor thought there was evidence to show appellant's guilt beyond a reasonable doubt. The government cites no support for its suggestion, which is contrary to the premise underlying *Drew v. United States*, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964), and the limitation on the admissibility of bad act evidence. *Sherer v. United States*, 470 A.2d 732, 738 (D.C.1983) (citations omitted), *cert. denied*, 469 U.S. 931, 105 S.Ct. 325, 83 L.Ed.2d 262 (1984); *see Porter v. United States*, 561 A.2d 994, 996–97 (D.C.1989). As to the argument that appellant had already been impeached with a prior weapons offense, the judge immediately gave a cautionary instruction, defense counsel brought out on redirect that appellant had not denied having the gun, *see* note 4, *supra*, and that conviction plainly did not bear the same relationship to the charged offense as the prior drug arrest at the same location.

7. Defense counsel advised the judge that she had wanted to bring out the evidence of appel-

Accordingly, because the error in admitting evidence of appellant's prior arrest was not harmless, we reverse and remand for a new trial.

lant's prior arrest by Officer Wiggins since the charges were subsequently dropped.