922 P.2d 582

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Danny WRIGHTER, Defendant–
Appellant.**

**No. 16184.**

Court of Appeals of New Mexico.

July 11, 1996.

Tom Udall, Attorney General, Max Shepherd, Assistant Attorney General, Santa Fe, for Appellee.

T. Glenn Ellington, Chief Public Defender, Sheila Lewis, Appellate Defender, Santa Fe, for Appellant.

## OPINION

APODACA, Chief Judge.

1. Defendant appeals his jury conviction of trafficking a controlled substance. He raises two issues on appeal: (1) the trial court erred in admitting testimony that he had previously sold drugs and (2) his conviction was not supported by sufficient evidence. We hold that, although Defendant's conviction was supported by substantial evidence, the trial court abused its discretion in admitting the testimony in question. We therefore reverse and remand for a new trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

2. The State's chief witness was Raney Spense. She testified that she was a former drug user who offered her services to the Lea County Drug Task Force to help get drug dealers off the streets of Hobbs. She stated that she knew Defendant because she had bought cocaine from him on January 13, 1994 (the date relevant to Defendant's conviction) and previously. She then described her purchase on that day from Defendant. About 6 p.m., she drove to the sheriff's substation where she usually met members of the Task Force. No one was there. She then drove to the Chicken Shack. Detective Gartman, a Task Force member, later testified that the sting operation was to be conducted in this particular location because the police were aware of the area's high narcotics trafficking pattern. Her account of what happened next was as follows:

> So I drove by the Chicken Shack on Byers. And as I pulled up to the stop sign, he ran up to my car. So I rolled my window down. And he asked me if I wanted to buy anything. So I told him I didn't have any money, that I was going to go get some money, I would be back. So that's when I went back to the old substation.

3. At the substation, Spense met members of the Task Force. As standard procedure, she was strip-searched, and her car was searched. The Task Force members found no controlled substances or currency. They then gave Spense $60 to buy drugs, equipped her with a transmitter so that they could monitor her conversation, and followed Spense back to the Chicken Shack.

4. When Spense arrived at the Chicken Shack, Defendant immediately entered her car. She gave him the money, and he went back into the restaurant. About four minutes later he returned to her car and handed her "three rocks" of crack cocaine. He asked her to smoke the drugs with him, but she refused, saying that she had to pick up her children from her mother. Defendant then left, and Spense drove back to the substation. On her arrival, she handed the drugs to a Task Force agent, was searched again, and gave a statement.

5. Several Task Force agents corroborated Spense's account. Additionally, one offi-

cer testified that, after Defendant's arrest in March 1994, Defendant stated that he was unsure whether he had sold Spense "crack" on January 13.

6. Defendant testified in his own defense. He described his relationship with Spense as a romantic one, although he admitted that they used drugs most of the time they were together. He also admitted that on January 13 he saw Spense at the Chicken Shack and that she gave him money to get drugs. But he denied purchasing drugs for her that night. He said that after she gave him the money, he returned to the Chicken Shack, having made arrangements to meet Spense at her home at 8 p.m. that night. When he went to her home at 8 p.m., however, no one was there. He denied that he had any drugs when he went to her house. He stated that he had planned to make a telephone call when he got there to have the drugs delivered. Although he later admitted on cross-examination that he had purchased drugs for Spense in the past, he contended that he had not really sold her the drugs because they both had contributed money for drugs that they could use together. He said that she would give him money for drugs only when he had none of his own and that the money was always for drugs that they used together.

## II. DISCUSSION

### A. Whether The Trial Court Erred In Admitting Testimony Of Defendant's Prior Rock Cocaine Sales To Raney Spense

7. Defendant argues that the trial court erred in admitting Spense's testimony that he had sold her drugs in the past. He contends that the only purpose for offering the evidence was improper—to prove Defendant's propensity to deal drugs. Defendant relies on SCRA 1986, 11–404(B) (1996 ed.) (Rule 404(B)), which states:

> **Other crimes, wrongs or acts.** Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admis-

sible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

The prohibition in the first sentence of the rule "is justified by concern that character evidence when used circumstantially is likely to be given more probative value than it deserves and may lead the fact-finder to punish a bad person regardless of the evidence of what happened in the specific case." *State v. Lamure,* 115 N.M. 61, 69, 846 P.2d 1070, 1078 (Ct.App.1992) (Hartz, J., specially concurring), *cert. denied,* 114 N.M. 720, 845 P.2d 814 (1993).

8. In contrast, the second sentence of the rule allows admissibility of prior misconduct if it serves a purpose other than to prove that the defendant is a bad person. The usual proper purposes for admitting other misconduct evidence are listed in the second sentence: "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." The State argues that the list is not exclusive; it is intended only to be illustrative as evidenced by the language of the rule that other misconduct evidence may "be admissible for other purposes, *such as* proof of motive, [etc.]." (Emphasis added.) *See State v. Jones,* 120 N.M. 185, 188, 899 P.2d 1139, 1142 (Ct.App.) ("New Mexico allows use of other bad acts for many reasons, including those not specifically listed in [Rule 404(B) ]."), *cert. granted,* 120 N.M. 68, 898 P.2d 120 (1995). However, even if we assume that New Mexico recognizes context as an admissible purpose under Rule 404(B) and that the testimony in question qualifies, the evidence must still meet the requirements of SCRA 1986, 11–403 (1996 ed.) (Rule 403). We therefore examine the evidence's probative value against its prejudicial effect, which is required under that rule.

9. Rule 403 provides that relevant evidence is inadmissible when the probative value is substantially outweighed by the danger of unfair prejudice. We review the trial court's decision for abuse of discretion. *See State v. Casaus,* 121 N.M. 481, 488, 913 P.2d 669, 676 (Ct.App.1996).

10. At trial, the State argued that the testimony was necessary to explain why Defendant would approach Spense and promptly ask her whether she wanted to buy drugs. The testimony would provide a context, the State contended, that could make credible what would otherwise be a rather implausible account. However, Spense's testimony that she knew Defendant, the later testimony of Detective Gartman that the sting operation was conducted in the particular location because the police were aware of that area's high narcotics trafficking pattern, and the fact that Defendant returned with cocaine after she gave him the money were completely sufficient to place the initial contact in context of a drug transaction. The solicitation of the inadmissible response is even more puzzling in light of the fact that, at the beginning of trial, the trial court partially granted Defendant's motion in limine forbidding the State to introduce Defendant's statement concerning prior drug sales. The trial court so ruled by determining that the danger of unfair prejudice substantially outweighed the probative value of Defendant's statement. Although the trial court had the discretion to later change its mind, the State could not have known that the court would do so before its question to Spense about the prior transactions at the trial itself. To be sure, it is inconsistent to conclude that the prejudice outweighed any probative value in the case of Defendant's statements of prior drug deals but not in the case of Spense's testimony. We see no difference. Additionally, the record does not reflect that the trial court changed its mind from its earlier ruling. Otherwise, the State would have attempted to admit Defendant's statements of prior drug transactions. What the record does reflect, however, is the glaring inconsistency noted above. If the State's goal was simply to place Defendant's actions in Spense's testimony in context, it could have called Detective Gartman to the stand before Spense and then later elicited from Spense that she knew Defendant, or found another way to place the contact between Spense and Defendant in context. Instead, the State solicited the identical testimony from Spense that it was previously instructed not to present by way of Defendant's own statements, claiming that the testimony was needed to establish context.

11. Even if we assume, however, that the testimony at issue was probative to show context, it was nonetheless highly prejudicial and properly excludable under Rule 403.[1] The real danger of admitting the past transactions in situations such as the one here is that, if the jury believed the informant's testimony about prior rock cocaine transactions with Defendant, the jury would conclude that Defendant sold rock cocaine in the past, and if he did so then, it is more likely he did so now. "One cannot ignore the long tradition of courts and commentators expressing fear that jurors are too likely to give undue weight to evidence of a defendant's prior misconduct and perhaps even to convict the defendant solely because of a belief that the defendant is a bad person." *Lamure,* 115 N.M. at 71, 846 P.2d at 1080 (Hartz, J., specially concurring).

12. Particularly illustrative is *Bennett v. United States,* 597 A.2d 24, 27 (D.C.1991). In *Bennett,* the defendant appealed his conviction of possession with intent to distribute cocaine. At trial, a witness was asked if she had been arrested for distribution and possession with intent to distribute drugs, and if so, whether she was arrested with someone else. The witness answered affirmatively to

---

**1.** The dissent claims that "the testimony as a whole provides a plausible account of why the transaction occurred as it did, thereby making credible the testimony by Spense," with the term plausible alluding to the contextual purpose for which the dissent maintains the testimony was admissible. However, if a witness testifies in court that a defendant presently sells drugs and has done so in the past, we believe a jury would not necessarily consider the witness' testimony more plausible just because the witness testifies that the defendant has also sold drugs in the past. Indeed, the witness would be just as likely to lie about the present sale as he or she would about a sale in the past, and a jury would be at liberty to so find. The jury could even conclude that the witness was lying about the past transaction but telling the truth about the present transaction, or vice versa.

the two questions. She was then asked the identity of the person with whom she had been previously arrested, and the witness named the defendant. Defense counsel objected to the questions about the defendant's prior arrest and moved for a mistrial. The trial court denied the request. The District of Columbia Court of Appeals, however, reversed and remanded for a new trial. The court stated:

The risk from the admissibility of a prior arrest of the defendant is that the jury may infer from the prior criminal conviction that the defendant is a bad man and that he therefore probably committed the crime for which he is on trial. This risk is greatest when, as here, the crime charged and the prior arrest involve the same offense.... The risk of an inference of propensity in these circumstances is unavoidable. Nonetheless, that risk might have been diminished had the court, in response to [the defendant's] mistrial motion, instructed the jury to disregard the question and answer; but no such ameliorative steps were taken.

*Bennett*, 597 A.2d at 27 (citations and internal quotations omitted); *see also Fields v. United States*, 396 A.2d 522, 527 (D.C.1978).[2]

13. The evidence admitted here is precisely the kind of evidence that should not be allowed under either Rule 404(B) or Rule 403 for the very reason that the perception of propensity and actual prejudice is unavoidable. *See Bennett*, 597 A.2d at 27. To state it differently, the rule was intended to bar the exact thing that the State attempted to do here—insinuate that Defendant sold cocaine to Spense on the day in question because he had done so in the past. The unfair prejudice resulting from the admission of Spense's testimony substantially outweighed any need for context, and it was an abuse of discretion and thus reversible error for the trial court to admit it. *See People v. Mason*, 219 Ill.App.3d 76, 161 Ill.Dec. 705, 708, 578 N.E.2d 1351, 1354 (1991) (suggestion that defendant had committed same crimes

against same victim constituted prejudicial error). Defendant's later admissions that he sold Spense drugs in the past were simply a necessary attempt to mitigate the significant damage caused by Spense's inadmissible testimony.

### B. Sufficiency Of The Evidence

14. We resolve summarily Defendant's second issue on appeal—that there was insufficient evidence of guilt.

When evaluating the sufficiency of evidence to support a conviction, we view the evidence in the light most favorable to the State, resolving all conflicts and indulging all permissible inferences to uphold a verdict of conviction.... The reviewing court engages in a two-step process: First it reviews the evidence ... with deference to the findings of the trial court; then it determines whether the evidence, viewed in this manner, could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt.

*State v. Sanders*, 117 N.M. 452, 456, 872 P.2d 870, 874 (1994).

15. Defendant essentially contends that the only evidence supporting his conviction was Spense's testimony and that no rational jury could have found her to be credible. We disagree. Her testimony was not inherently incredible and it was corroborated by other evidence. Reviewing the evidence under the guidelines stated in *Sanders*, we hold that a rational trier of fact could find that each element of the crime had been established beyond a reasonable doubt.

### III. CONCLUSION

16. We conclude that the testimony at issue was not admissible, first because the testimony was not highly probative to prove context as contended by the State, and second because the probative value, if any, was substantially outweighed by the danger of unfair prejudice. We also hold that substantial evidence supported Defendant's convic-

---

2. Most of the cases cited by the dissent in which the probative value/prejudicial effect balancing test was applied, are distinguishable from the facts in this appeal in that those cases did not involve the same defendant, the same witness, and the same crime.

tion. We reverse the conviction and remand for a new trial consistent with this opinion.

**17. IT IS SO ORDERED.**

DONNELLY, J., concurs.

HARTZ, Judge, dissenting.

(18) I respectfully dissent. I agree that Defendant's conviction was supported by substantial evidence, but I do not agree that the district court abused its discretion in admitting Spense's testimony about her prior drug purchases from Defendant. In my view, the district court could properly find that the testimony was highly probative evidence and posed little danger of unfair prejudice.

(19) Spense's testimony concerning her transaction with Defendant was as follows:

> ... I drove by the Chicken Shack on Byers. And as I pulled up to the stop sign [Defendant] ran up to my car. So I rolled my window down. And he asked me if I wanted to buy anything. So I told him I didn't have any money, that I was going to go get some money, I would be back. So that's when I went back to the old substation.

> [After Spense returned to the Chicken Shack] I pulled up in front and [Defendant] came and got in my car and he asked for the—I gave him the money. I asked him if he had got it. He said he had to go in and get it. So I gave him my money. And he went inside. He was in there for about four minutes and he came back out and got in the car again, and I asked him if he got it and he said, "Yes." And he put it in my right hand. And I told him I had to go, and he said he wanted to smoke it with me, and I told him I couldn't because I had to go pick up my kids. I think that's the excuse I gave. So he got out of the car and I went back to the substation again.

(20) In other words, a drug dealer approaches a driver stopped at a stop sign and offers to sell drugs, without making any inquiry as to the "trustworthiness" of the driver and without any mention of what drug or drugs are available. When the buyer returns, the transaction is consummated without any discussion of price or type of drug, and the seller even requests an opportunity to smoke the drugs with the purchaser. I would venture to say that such a transaction is outside the realm of experience of the great majority of jurors in this state, including Lea County.

(21) A juror could respond to such an account in several different ways. One response would be simply to credit Spense as a truthful witness and believe what she said, no matter how strange it may appear. A second response would be to speculate about how such a transaction could occur. One might speculate that this is simply how the seamy side of the world carries on its business. Or one could speculate that this transaction must have been only the latest in a series of transactions, so that the parties did not need to be explicit in order to know exactly what they were talking about in terms of the substance to be sold and the price. Another possible response would be to harbor a reasonable doubt that such a peculiar transaction could have occurred; the consequence would be to vote for acquittal.

(22) A competent prosecutor will not unnecessarily rely on the credulity or speculation of the members of the jury. Rather, the prosecutor will offer available evidence to explain how the transaction occurred as it did. Such evidence is indisputably relevant to the case. Even if the explanation involves evidence of prior misconduct by the defendant, it is not barred by SCRA 1986, 11–404(B) (Repl.1994), because it is not being offered "to prove the character of a person in order to show action in conformity therewith." *Id.*

(23) The federal courts, whose pertinent rules of evidence are virtually identical to New Mexico's, routinely admit evidence of prior crimes by the defendant to explain the relationship between the defendant and another participant in the charged transaction. One case closely in point is *United States v. Costa*, 691 F.2d 1358, 1360–61 (11th Cir. 1982). In that case a witness had been pressed by an undercover agent to find a kilogram of cocaine and had called the defen-

dant to supply it. The witness explained that he knew from his prior relationship with the defendant that the defendant had dealt in cocaine. Over a defense challenge that the testimony violated Fed.R.Evid. 404(b), the court held:

> The relationship between [the defendant] and [the witness], however, was not extrinsic to the Government's charge. [The witness] testified as to the circumstances in which he came to know [the defendant] as a dealer in cocaine to show why he could expect [the defendant] to provide him with a kilogram.... Therefore, [the witness's] testimony about [the defendant's] previous dealing in cocaine was necessary because it formed an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted.

*Id.* at 1361; *accord United States v. Evans,* 697 F.2d 240, 248 (8th Cir.) (testimony of prior drug deal between the witness and the defendant admissible to show why the witness called the defendant to arrange marijuana transaction for which he was prosecuted), *cert. denied,* 460 U.S. 1086, 103 S.Ct. 1779, 76 L.Ed.2d 350 (1983). Other courts have also permitted evidence of prior drug transactions to explain the relationship of the parties and to put the charged transaction in context. *See, e.g., United States v. Dworken,* 855 F.2d 12, 27 (1st Cir.1988); *United States v. Roldan–Zapata,* 916 F.2d 795, 804 (2d Cir.1990), *cert. denied,* 499 U.S. 940, 111 S.Ct. 1397, 113 L.Ed.2d 453 (1991); *United States v. O'Leary,* 739 F.2d 135 (3d Cir.1984), *cert. denied,* 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 776 (1985); *United States v. Royal,* 972 F.2d 643, 648 (5th Cir. 1992); *United States v. Hoelker,* 765 F.2d 1422, 1426 (9th Cir.1985), *cert. denied,* 475 U.S. 1024, 106 S.Ct. 1219, 89 L.Ed.2d 330 (1986); *People v. Miller,* 890 P.2d 84, 98 (Colo.1995) (en banc) (trial judge admitted evidence of prior drug transactions "to rebut the 'almost incredible implication' ... that [the defendant] would have conducted such a serious drug transaction 'with a passing stranger'"). The admissibility of other-mis-

conduct evidence to establish the relationship between the defendant and a cohort is not confined to drug prosecutions. *See, e.g., United States v. Chaverra–Cardona,* 879 F.2d 1551, 1554–55 (7th Cir.1989) (murder); *United States v. Mejia–Velez,* 855 F.Supp. 607, 610–12 (E.D.N.Y.1994) (murder); *State v. Hamilton,* 5 Or.App. 266, 483 P.2d 90, 91 (1971) (statutory rape); *State v. Shillcutt,* 116 Wis.2d 227, 341 N.W.2d 716, 719–20 (Ct. App.1983) (prostitution), *aff'd,* 119 Wis.2d 788, 350 N.W.2d 686 (1984).

(24) New Mexico case law supports the same view. We have repeatedly recognized that other-misconduct evidence may be admissible to establish context. *See State v. Jones,* 120 N.M. 185, 188, 899 P.2d 1139, 1142 (Ct.App.), *cert. granted,* 120 N.M. 68, 898 P.2d 120 (1995). For example, in *State v. Jordan,* 116 N.M. 76, 860 P.2d 206 (Ct.App.), *cert. denied,* 115 N.M. 795, 858 P.2d 1274 (1993), evidence of uncharged sexual misconduct was admitted to show why the victim's father asked her whether the defendant had molested her. *Id.* at 80–81, 860 P.2d at 210–11; *see State v. Ruiz,* 119 N.M. 515, 518–20, 892 P.2d 962, 965–67 (App.1995); *State v. Landers,* 115 N.M. 514, 520, 853 P.2d 1270, 1276 (Ct.App.1992) ("We believe the evidence corroborated the victim's testimony and placed the charged acts in context."), *cert. quashed,* 115 N.M. 535, 854 P.2d 362 (1993).

(25) The majority suggests that Spense's testimony about prior purchases from Defendant was not necessary to establish context, because Detective Gartman testified that the police were aware of the "area's high narcotics trafficking pattern." There are several flaws in this argument. First, Detective Gartman testified after Spense did. The district court had to decide admissibility based on what was presented to the court at the time of the ruling. Second, it is not clear to me that Detective Gartman's testimony was admissible. We need not decide that issue on this appeal, because there was no objection to his testimony. But it would indeed be ironic if we were to hold that otherwise admissible testimony was inadmissible because inadmissible evidence was later admitted into

evidence without objection. Third, Detective Gartman's testimony does not really explain Spense's transaction with Defendant. A "high narcotics trafficking pattern" does not necessarily imply that transactions are conducted without any caution. One would think that anyone committing a felony by selling contraband to a stranger would want some assurance that the stranger could be trusted. Moreover, the existence of active narcotics trafficking in the area does not explain how the transaction between Spense and Defendant was consummated without any discussion of what drug was to be sold or what the price was, even if they already knew each other in some different capacity.

(26) In any event, even if Gartman's testimony would provide a satisfactory explanation, the real reason why the transaction occurred as it did was because Spense and Defendant had engaged in similar transactions in the past, not because the site of the transaction was a drug-saturated neighborhood. The State is entitled to present the real reason why something happened the way it did. It is not required to rely on another possible explanation that was in fact not the real explanation.

(27) I also disagree with the majority's assessment of the potential for unfair prejudice. Spense's testimony regarding Defendant's uncharged misconduct consisted solely of her answering "Yes, ma'am" to the question "Had you previously bought rock cocaine from the defendant?" This response was hardly inflammatory. *See Roldan–Zapata*, 916 F.2d at 804.

(28) In addition, the risk was slight that the jury would decide to convict based on improper use of the other-misconduct evidence. The sole *testimony regarding prior* transactions was by Spense herself. Consequently, the district court could reason as follows: It is inconceivable that the jury could believe Spense's testimony about Defendant's prior offenses if it did not believe her account of the charged offense. Thus, by the time the jury could conclude that Defendant had a propensity to sell drugs, it must have already decided that Defendant was guilty of the charged offense. In other words, improper use of evidence of propensity could not infect the verdict. To be sure, the testimony of prior offenses and the testimony describing the charged offense are to some degree mutually reinforcing. But the primary reason for this mutual reinforcement is that together they create a coherent picture—the testimony as a whole provides a plausible account of why the transaction occurred as it did, thereby making credible the testimony by Spense about the charged offense. Such use of the evidence of prior offenses is perfectly proper.

(29) Based on this reasoning the district court could conclude that the risk of unfair prejudice was minimal. In particular, the district court could properly determine that the risk of unfair prejudice did not substantially outweigh the probative value of Spense's testimony in explaining how the transaction between Defendant and Spense could have occurred in the manner that it did.

(30) A federal district court adopted similar reasoning in a prosecution for murder for hire. The defendant's accomplices were permitted to testify that the defendant had told them that he had previously committed murder. The court explained:

> The evidence of prior acts here came from the same witnesses who testified that they hired the defendant to carry out the murder. If the jury found these witnesses to be credible, the defendant would be convicted even if the accomplices were not permitted to testify about defendant's admission of prior homicides. On the other hand, if the jury did not find their testimony to be credible with respect to the crime in issue, there is no reason why it would have credited the testimony of these witnesses with respect to the prior acts.
>
> . . . .
>
> ... The testimony that the defendant admitted to other homicides enhanced the credibility of the accomplices only because it provided a plausible answer to the ques-

tion of why they recruited the defendant to be the triggerman.

*Mejia–Velez,* 855 F.Supp. at 611–12.

(31) Because I believe that the district court acted well within the bounds of a sound discretion in admitting the challenged testimony,[1] I respectfully dissent.

---

1. The majority notes that earlier in the proceedings the district court had granted a motion in limine to exclude Defendant's statement that he had sold Spense cocaine in the past. I fail to see the relevance of that earlier ruling. To the extent that the majority suggests that the prosecutor acted improperly in tendering Spense's testimony about her prior transactions with Defendant, the district court obviously did not believe that the prosecutor had violated a prior order. To the extent that the majority is contending that the district court made inconsistent rulings, that is legally irrelevant. Our concern is only the challenged ruling. In any event, the prosecutor did not make the same argument in response to the motion in limine that she made in response to the objection to Spense's testimony. In particular, on the first occasion she did not contend that the testimony was necessary to explain how the transaction came about as it did.