Michael Anthony SOLIS, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 97–227.

Supreme Court of Wyoming.

April 28, 1999.

Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; Stephen I. Singer,* Faculty Director, and Melissa L. Mulligan, Student Intern, of the Defender Aid Program, Representing Appellant. Argument by Stephen I. Singer.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Theodore E. Lauer, Director, and Rachel G. Hodson, Student Intern, of the Prosecution Assistance Program. Representing Appellee. Argument by Rachel G. Hodson.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,** JJ.

GOLDEN, Justice.

Appellant Solis was convicted on three counts of heroin delivery to a paid police informant. He appeals his conviction claiming improper, prejudicial uncharged misconduct evidence was admitted requiring a reversal.

We affirm.

## ISSUES

Solis presents this issue for our review:

Whether the trial court erred in admitting extensive testimony by an informant about alleged prior drug transactions between the informant and Mr. Solis which were

---

* Order granting Singer's motion to withdraw as counsel on behalf of Appellant entered on May 18, 1998.

** Chief Justice at time of oral argument; retired November 2, 1998.

unconnected and irrelevant to the three distinct instances of charged conduct?

The State rephrases this issue:

Did the district court err in admitting evidence of appellant's prior relationship with witness Deborah Campos, including her prior purchases of heroin from appellant?

## FACTS

Deborah Campos, a heroin addict for more than thirteen years, suffered an overdose in August of 1996. Shortly after that, she began calling the Cheyenne Police Department's silent witness program and reporting that Solis was a heroin dealer. Eventually, she identified herself to police, agreed to act as an informant for the police department, and to purchase heroin from Solis while wearing a recording device. Police had Campos buy heroin on August 28, 29, and 30, 1996. She was paid $220 by police for making these purchases. Before she made the purchases, police searched her person and her car and tape-recorded the telephone calls to Solis arranging the purchases. The purchases were tape recorded and either video recorded or photographed as police surveilled; however, police officers testified that they were unable to see Campos hand Solis the buy money and were unable to see exactly what Solis placed in Campos' hand. After each buy, Campos rejoined police and produced tiny packets containing heroin.

Solis was arrested for three counts of delivery of heroin to Campos. Before trial, the State notified the defense that it intended to use evidence of prior drug transactions between the defendant and the informant during the period of February, 1996, through August 30, 1996, to show a course of conduct and for identification purposes. The defense objected to admission of this evidence, contending that it was hearsay, and that identity was not at issue. A pretrial hearing was held, and the State requested admission of these uncharged crimes to explain to the jury why Campos had targeted Solis, expressing a concern that the jury would be mystified and wonder about the reason. The district court delayed ruling until hearing Campos' testimony out of the hearing of the jury. After hearing about Campos' and Solis' long relationship in heroin dealing, the district court admitted the evidence for the purpose of establishing "the history of the relationship between this witness and the defendant, a course of dealing between the two," and "a context" for the charged conduct.

The defense's theory of the case established during opening statement, cross-examination of Campos, and Solis' testimony maintained that packets of heroin are very small and easily hidden in hair, a bra, on various parts of a body, in underwear or in shoes, and the jury was going to have only Campos' word that Solis had delivered heroin; there was no corroborating evidence. Campos testified that it was heroin. Solis testified that he did not deliver heroin, and had in fact delivered codeine pills to Campos, a longtime friend, to help her withdraw from her heroin addiction. The defense theory also asserted that Campos' motivation for informing was to collect money from the police to support her heroin addiction.

The jury was instructed that the uncharged misconduct could only be considered for the limited purpose of showing a history of the relationship between Solis and Campos and a course of conduct. It returned a jury verdict of guilty on all counts, and this appeal followed.

## DISCUSSION

During presentation of the State's case-in-chief, Campos testified that Solis had been supplying her with heroin for several months in 1996. After her overdose, Campos turned in her supplier to police by calling the silent witness program. The State contends that this course of conduct testimony was essential to explain to the jury why Campos was motivated to single out Solis and become an informant. Solis contends that the testimony was not relevant to any contested issue and its primary purpose was to show bad character, a purpose prohibited under W.R.E. 404(b).

Rule 404. **Character evidence not admissible to prove conduct; exceptions; other Crimes.**

(a) *Character evidence generally.*—Evidence of a person's character or a trait of

his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) Character of Accused.—Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;

(2) Character of Victim.—Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

(3) Character of Witness.—Evidence of the character of a witness, as provided in Rules 607, 608, and 609.

(b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Rule 404 "prohibits character evidence for the purpose of showing that the defendant acted in conformity with his 'bad character,' but permits the use of such evidence for other purposes." *Brown v. State,* 953 P.2d 1170, 1175 (Wyo.1998). "The key inquiry is whether the act tends to prove something other than propensity to commit the charged crime and, if so, whether relevancy outweighs the risk of prejudice." *Id.* at 1175–76. A ruling on the admissibility of uncharged misconduct evidence is within the sound discretion of the trial court and entitled to considerable deference on appeal. *Id.* at 1175. The specific test to determine if Rule 404(b) evidence is admissible is whether it is relevant evidence offered for a proper purpose; its probative value is not substantially outweighed by its potential for unfair prejudice; and a limiting instruction is given when requested. *Vigil v. State,* 926 P.2d 351, 357 (Wyo.1996) (citing *Huddleston v. United States,* 485 U.S. 681, 691–92, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988)).

Solis' precise contention is that *Crozier v. State,* 723 P.2d 42, 50 (Wyo.1986), requires that we limit the course of conduct purpose to those occasions where the other crimes' evidence is part of the same sequence of events that constitute the crimes for which the defendant is on trial. Some jurisdictions refer to this evidence as falling under the "same transaction" rule. *Crozier,* 723 P.2d at 49–50. Narrowing the scope of the course of conduct exception to evidence of other acts only when a part of the same transaction is an arbitrary limitation unwarranted by the plain language of Rule 404(b) specifically permitting other acts evidence when "admissible for other purposes."

Other than hearsay rulings, Rule 404(b) rulings represent the most difficult evidentiary decisions required of the judiciary. Careful, reasoned judgment is essential, because it is simply undeniable that the impact of criminal activity evidence upon juries is powerful. It is for this reason that good prosecutors will always suggest a reason for admitting it, and a zealous defense will vigorously oppose admission. Against this backdrop, the role of the court is to be mindful of the dangers of admitting other acts evidence, skeptical of its necessity, but willing to admit the evidence when it is offered for a proper purpose that is material to the case at hand and is not unduly prejudicial. The rules of evidence require admitting logically relevant evidence when appropriate. Only by engaging in careful, sophisticated analysis and eschewing bright-line rules will the court distinguish between the evidence offered only to show propensity, serving no legitimate purpose and permitting a conviction without sufficient evidence of guilt, and evidence offered to fairly present a complete story and provide juries with sufficient evidence about disputed, material facts to allow a reasoned judgment.

Before trial, the prosecutor requested admission of these uncharged crimes to show why Campos had targeted Solis, expressing a concern that the jury would be mystified as to why Solis was targeted. The district court delayed ruling until hearing Campos' testimony out of the hearing of the jury. After hearing about Campos' and Solis' long rela-

tionship in heroin dealing, the district court admitted the evidence for the purpose of establishing "the history of the relationship between this witness and the defendant, a course of dealing between the two," and "a context" for the charged conduct. Solis focuses on this initial admission and contends that it is improper character evidence.

■ At the time of the trial court's ruling, however, our decisions allowed admitting uncharged misconduct and other acts evidence to show a course of conduct in order to give the jury a complete story when it is relevant and necessary to tell the complete story for the jury's understanding. *Crozier,* 723 P.2d at 50. We have also approved the admission of such evidence when necessary to understand the context of the crime charged. *Longfellow v. State,* 803 P.2d 848, 854 (Wyo. 1990) (citing *Scadden v. State,* 732 P.2d 1036, 1044 (Wyo.1987)). Our recent decision in *Brown* admitted testimony, under the course of conduct purpose, to explain a relationship that was difficult to understand. *Brown,* 953 P.2d at 1177. In other narcotics cases, we have admitted prior drug transactions to explain why the defendant was targeted; to enhance the natural development of the facts in the case; to explain the context of the uncharged delivery; and to explain part of the history of the event. *Rodriguez v. State,* 962 P.2d 141, 147 (Wyo.1998); *Spencer v. State,* 925 P.2d 994, 997–98 (Wyo.1996); *Beintema v. State,* 936 P.2d 1221, 1224 (Wyo. 1997); *Vigil,* 926 P.2d at 358. Testimony about Campos' and Solis' past relationship provided context and understanding to the jury about a course of conduct that needed to be explained. The trial court did not abuse its discretion in determining these were proper purposes under Rule 404(b).

The defense theory ultimately developed at trial affirmed the correctness of the trial court's decision. If one views this case as simply presenting the question of whether Rule 404(b) permits evidence of prior drug deliveries in a drug delivery prosecution, the answer is an unqualified no. But that is not the question that is presented by this case when one reviews the entire record.

The question is whether evidence of prior drug deliveries is admissible under another theory when the defendant admits that he participated in a drug transaction but disputes that the substance in question was heroin and when the defendant maintains that the informant lied about the nature of their drug transaction for the sole reason of receiving money from police as a paid informant. In other words, the defense is presenting a theory admitting there was a delivery, but denying there was a delivery of heroin. Additionally, the defendant's theory requires the prosecution to prove that defendant has placed himself in the false light of innocent do-gooder. Rule 404(b) allows evidence of other crimes, wrongs, or acts for the proper purpose of establishing that it was heroin that defendant delivered to the witness and his claimed act of helpful friendship is false.

In this case, the admission of Solis' prior drug deliveries did not create this defense strategy or place Solis in the position of having to testify. Had the State proceeded without the uncharged crime evidence, the prosecution had recordings of the telephone calls arranging the drug buys, police surveillance evidence and the heroin purchased. Faced with this evidence, the defendant could not employ a defense strategy alleging either wrong identity or that the evidence was not proof beyond a reasonable doubt. His only possible defense strategy was to offer another explanation for his conduct as observed during the drug transaction.

The exact defense theory was not established until defense counsel's opening statement, pointing out that packets of heroin are very small and easily hidden in hair, on various parts of the body, and in clothing, and the jury was going to have only Campos' word that Solis had delivered heroin; there was no corroborating evidence. The opening statement pronounced Campos a liar for money. When Solis testified, he claimed that he did not deliver heroin, and in fact had delivered codeine pills to Campos because she was a friend and he wanted to help her withdraw from her heroin addiction.

Solis' prior drug deliveries demonstrate a course of conduct logically relevant to the disputed issues of substance identity, and Campos' motivation for targeting Solis in a

police investigation. Without the information, the jury would have been mystified as to why Campos chose Solis to call and arrange a drug transaction, and Solis' version of events, as presented in opening statement, cross-examination, and when he testified in his own behalf, would not have been properly discredited.

## CONCLUSION

Testimony about Campos' and Solis' past relationship provided context and understanding to the jury about a course of conduct that needed to be explained. The trial court did not abuse its discretion in determining these were proper purposes under Rule 404(b). We affirm the order of conviction.

LEHMAN, Chief Justice, dissenting.

Nearly ten years ago, Justice Macy wrote: "I still contend, however, that we are laboring over a rule of evidence which has been emasculated by judicial exceptions." *Gezzi v. State,* 780 P.2d 972, 986 (Wyo.1989) (Macy, J. specially concurring). *See also Longfellow v. State,* 803 P.2d 848, 851 (Wyo.1990). Because the majority opinion further emasculates W.R.E. 404(b), I respectfully dissent.

My disagreement with the majority opinion is twofold. First, Wyoming precedent does not authorize the majority's review of the entire record and use of what "ultimately developed" at trial to justify the district court's pretrial admissibility ruling. In 404(b) cases, this court's review is limited to the justification approved by the trial court, which in this case was "course of conduct." Second, I do not agree that the course of conduct exception permits the admission of Campos' testimony. If Rule 404(b) is to remain viable, this sort of highly prejudicial propensity evidence should be excluded.

When reviewing claims that evidence was improperly admitted under W.R.E. 404(b), this court is limited: "If the objection is lodged and the evaluation under *Huddleston* [*v. U.S.,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) ] is made, the State will be limited to the theory of admissibility advanced to and approved by the trial court."

*Vigil v. State,* 926 P.2d 351, 355 (Wyo.1996). In this case, review should be limited to the district court's theory of admission, that the testimony established "the history of the relationship between this witness and the defendant, a course of dealing between the two," and "a context" for the charged conduct.

Instead of adhering to the limitations of *Vigil,* the majority reviews the "entire record" and even writes: "The defense theory ultimately developed at trial affirmed the correctness of the trial court's decision." Maj. op. at 31. Such a method of review is unprecedented. If the majority intends to overrule *Vigil,* it should do so. If not, it should follow *Vigil's* command and limit its review to the "course of conduct" justification.

Perhaps Campos' testimony about the prior deliveries would have been proper to rebut Solis' testimony that he delivered codeine and not heroin. *See Lobatos v. State,* 875 P.2d 716, 720 (Wyo.1994) ("the element of substance identity can be proven beyond a reasonable doubt based upon circumstantial evidence"); *Noetzelmann v. State,* 721 P.2d 579, 582 (Wyo.1986) (evidence of prior drug sales uses to refute defendant's theory that he did not intend to engage in sale of marijuana, i.e., that he had been entrapped). However, this is not the question before the court. The objectionable 404(b) testimony was introduced, in the State's case in chief, prior to Solis' testimony. Indeed, the district court's admissibility ruling was made prior to opening statements. Therefore, the issue before this court is whether the "course of conduct" exception was properly employed, and what "ultimately developed" at trial is not proper for review.

Turning to the course of conduct exception, I disagree with the majority when it writes: "Testimony about Campos' and Solis' past relationship provided context and understanding to the jury about a course of conduct that needed to be explained." Maj. op. at 30–31. The question for the jury was a simple one: did Solis deliver heroin to Campos? Although this court has approved the use of evidence of uncharged deliveries as course of conduct in drug conspiracy cases, I

find no compelling reason to extend this exception to drug delivery prosecutions. In the context of a conspiracy, course of conduct can be utilized to prove the relationship between the co-conspirators. *Dorador v. State,* 768 P.2d 1049, 1053 (Wyo.1989); *Wehr v. State,* 841 P.2d 104, 109 (Wyo.1992). "Because most conspiracies are clandestine in nature, the prosecution is seldom able to present direct evidence of the agreement. Courts have been sympathetic to this problem, and it is thus well established that the prosecution may 'rely on inferences drawn from the course of conduct of the alleged conspirators.'" *Burke v. State,* 746 P.2d 852, 855 (Wyo.1987) (citation omitted). I see no like justification in this case.

However, even assuming the testimony was necessary to explain the relationship between Solis and Campos or to establish context, I would nevertheless hold the testimony inadmissible. In *State v. Wrighter,* 122 N.M. 200, 922 P.2d 582, 584 (App.1996), an informant was permitted to testify that the defendant had sold drugs to her in the past. On appeal, the State argued that the prior deliveries provided context for the charged deliveries. 922 P.2d at 585. The New Mexico court rejected this argument:

> Even if we assume, however, that the testimony at issue was probative to show context, it was nonetheless highly prejudicial and properly excludable under Rule 403. The real danger of admitting the past transactions in situations such as the one here is that, if the jury believed the informant's testimony about prior rock cocaine transactions with Defendant, the jury would conclude that Defendant sold rock cocaine in the past, and if he did so then, it is more likely he did so now....

> . . .

> The evidence admitted here is precisely the kind of evidence that should not be allowed under either rule 404(B) or Rule 403 for the very reason that the perception of propensity and actual prejudice is unavoidable. To state it differently, the rule was intended to bar the exact thing that the State attempted to do here—insinuate that Defendant sold cocaine to Spense on

the day in question because he had done so in the past.

*State v. Wrighter,* 922 P.2d at 585–86 (footnote and citation omitted).

I find the reasoning of the New Mexico court to be persuasive. Because Solis lodged timely objections to the 404(b) evidence, I would hold that it was error to admit the prior delivery testimony under the course of conduct exception. This is consistent with numerous other cases that hold evidence of uncharged deliveries inadmissible in drug delivery prosecutions. *See People v. McNeal,* 42 Colo.App. 215, 592 P.2d 21, 22 (1979); *State v. Davis,* 213 Kan. 54, 515 P.2d 802, 806 (1973); *Roche v. State,* 326 So.2d 448 (Fla. App. 2 Dist.1976); *People v. Rivera,* 144 A.D.2d 258, 533 N.Y.S.2d 858, 859–860 (N.Y.A.D. 1 Dept.1988) (no objection to prior delivery testimony; error so substantial that reversal required in interest of justice); *People v. Espada,* 205 A.D.2d 332, 613 N.Y.S.2d 165 (N.Y.A.D. 1 Dept.1994); *State v. Carter,* 323 S.C. 465, 476 S.E.2d 916, 918–19 (App. 1996); *People v. Daniels,* 11 Ill.App.3d 834, 297 N.E.2d 662, 664 (1973); *Ross v. State,* 276 Md. 664, 350 A.2d 680, 685 (1976); *State v. Clark,* 338 So.2d 690 (La.1976) (evidence of subsequent deliveries); *State v. Reed,* 447 S.W.2d 533, 534 (Mo.1969).

Furthermore, I do not find the other cases on which the majority relies to be on point. The majority cites to three recent drug delivery cases in which this court utilized the course of conduct exception, *Beintema v. State,* 936 P.2d 1221, 1223–24 (Wyo.1997); *Spencer v. State,* 925 P.2d 994, 996–98 (Wyo. 1996); and *Vigil v. State,* 926 P.2d 351, 355–58 (Wyo.1996). Because each of those cases was decided under our exacting plain error standard, they simply serve to underscore the importance of an objection, either before trial or contemporaneously, to the 404(b) testimony. *See Vigil v. State,* 926 P.2d at 354 ("We hold we should follow the lead of the federal courts, and require an appropriate objection to be lodged, at trial or before, to evidence inadmissible under W.R.E. 404(b)"). In addition, although I joined the majority opinion in *Rodriguez v. State,* 962 P.2d 141 (Wyo.1998), I now believe that case and the present majority opinion to be incorrect ap-

plications of Rule 404(b). I decline to compound this court's error in *Rodriguez* by joining the present majority opinion.

In conclusion, I find the following statement by the majority to be rather insincere: "If one views this case as simply presenting the question of whether Rule 404(b) permits evidence of prior drug deliveries in a drug delivery prosecution, the answer is an unqualified no." Maj. op. at 31. This assertion rings hollow when the previous paragraph is considered: "Testimony about Campos' and Solis' past relationship provided context and understanding to the jury about a course of conduct that needed to be explained." With the majority recognizing that "good prosecutors will always suggest a reason for admitting" 404(b) testimony, the simple fact is that, in every case in which the prosecution wishes to introduce evidence of prior deliveries, these prior deliveries will form a "course of conduct." With the publication of the majority opinion, the answer to the question posed by the majority becomes, in application, an unqualified yes. I respectfully dissent.