Fillipo BALDI, Appellant,

v.

Stephen J. NIMZAK, Appellee.

No. 2493.

Municipal Court of Appeals for the
District of Columbia.

Argued Dec. 21, 1959.

Decided March 29, 1960.

Edgar A. Wren, Washington, D. C., for appellant.

Ruffin A. Brantley, Washington, D. C., C. Ralph Snowden, Washington, D. C., on the brief, for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

Appellee Steve Nimzak sued appellant Baldi for slanderous statements allegedly made shortly after he terminated his employment as trainer of Baldi's horses. The statements were occasioned by the fact that on Nimzak's last day of work one of the horses died, and Baldi supposedly attributed the cause of its death to Nimzak's wrongdoing. Also, at the time he left, Nimzak admittedly took with him certain equipment from Baldi's stables to secure money which he claimed was still owed him under an owner-trainer profit-sharing plan on winnings from races already run. Baldi appeals from a judgment of $10,000, entered pursuant to the verdict of a jury.

The pre-trial order limited Nimzak to proof of several statements, only two of which charged him with acts or conduct which, if true, would have subjected him to indictment and punishment for crimes involving moral turpitude. These statements were: "Steve poisoned my horse", and "Steve stole a lot of equipment from me". If proved as alleged, these statements would have constituted slander actionable per se and justified the general recovery here without the necessity of pleading or proving special damages,[1] which was not done. For reasons set forth below, we feel that the former statement was not proved, and the latter was vitiated, so that it was error for the trial court to instruct the jury on slander actionable per se and the consequent presumption of damages.

The only testimony elicited concerning the first charge was as follows:

"Q. Well what were some of the things he [Baldi] accused him of, Mr. Lundmark?

"A. Oh, well, I can remember him saying that Steve had given his horse something to make him sick. And, Steve had neglected his horse and caused his horse to die."

Assuming *arguendo* that the court was correct in taking judicial notice of the Maryland statute which makes the willful and malicious injury to a race horse a felony,[2] it is nevertheless clear that this statement attributed to Baldi fails to charge in clear and unambiguous language the commission of any crime for which Nimzak could be indicted and punished. While the statute makes tampering with or giving a race horse "something to make him sick" a felony, proof of such words without more fails to provide the necessary elements of malice and intent included in "Steve poisoned my horse"; and coming in such close proximity to the charge of neglect in the care of the horse makes Nimzak's contention that the charge is made out by inference untenable. In a suit for slander actionable per se where proof is limited to

1. Pollard v. Lyon, 91 U.S. 225, 23 L.Ed. 308; Friedlander v. Rapley, 38 App.D.C. 208; 1 Harper & James, Torts, § 5.10.

2. 3 Annotated Code of Maryland, art. 27, § 61.

certain specified words, substantial proof of the alleged words is said to be sufficient. But this does not mean that only the substance or gist of the charge need be proved by equivalent words, but that so much of the statement actually averred must be proved so as to justify and support the action. Fleet v. Tichenor, 156 Cal. 343, 104 P. 458, 34 L.R.A.,N.S., 323.[3] Since the words proved here failed to charge Nimzak with an indictable offense, the deficiency cannot be supplied by inference and it was error for the court to allow the jury to consider the statement as being actionable per se when there was in fact no evidence on the issue of the charge of poisoning to support such an instruction. McDaniel v. Cusimano, D.C. Mun.App., 148 A.2d 303; Watwood v. Credit Bureau, Inc., D.C.Mun.App., 97 A. 2d 460.

■■ The second statement here concerned, which appellee Nimzak was limited to proving, was "Steve stole a lot of equipment from me". This was testified to by several witnesses, the first of whom stated that Baldi had made the charge at the fall meet of the Laurel race track, sometime between October and December of 1958. This was subsequent to the filing of the complaint in April 1958, and the testimony was therefore erroneously received into evidence. Counsel for Baldi did not object immediately to the admission of this testimony but allowed another witness to be called to testify before he made a motion for mistrial to the judge in chambers at the noon recess. While the objection might have been raised earlier, before the second witness testified, the record indicates that the actual time lapse was not excessive and we do not feel counsel should be penalized for waiting until the noon recess to argue his motion out of the hearing of the jury.

■ Having found that the objection to the improper testimony was timely raised,

the issue presented in this assignment of error is whether the denial of the motion for mistrial was reversible error, for it is undoubtedly the law that an appellate court will not reverse for harmless error. Two witnesses later testified that Baldi had made the accusation of theft before April 1958, and if the jury had been given instructions to disregard the testimony of the first witness immediately after the commencement of the afternoon session, there would have been sufficient evidence on the issue of theft to support a finding of the jury thereon. The court, however, did not so instruct the jury upon denial of the motion for mistrial and allowed the improper testimony to remain before the jury during the length of the trial. The only instruction given which indicated to the jury that it was not to consider certain testimony came at the end of the trial and was as follows:

" * * * The first witness—the testimony of the first witness related only to a period after this suit was filed and the Court held that was, therefore, not to be considered by you. That was Mr. Stabler, because the complaint when filed indicated certain specific statements which must be proven."

■ In Yeldell v. United States, D.C. Mun.App., 153 A.2d 637, we held that prejudicial error warrants immediate instructions or the grant of a mistrial upon motion timely made. Unless adequate precautions are taken to immediately correct errors of this nature when they occur we do not think that instructions at the termination of all the evidence are sufficient to divest from the mind of the jury the weight and credibility it accorded the prejudicial evidence when introduced. Apart from the delay in giving the instruction, it is doubtful that the jury could have determined the reason for disregarding the testimony, whether due to its being concerned with facts subsequent to the pleadings or a statement not included among those which Nim-

3. See also Annotation, 2 A.L.R. 367.

zak was limited to proving. We are unable to say, therefore, that the testimony of the first witness had no influence upon the jury's verdict and have no choice but to reverse on this point.

Counsel for Nimzak contends that appellant Baldi is foreclosed from raising on appeal the foregoing assignments of error because he acquiesced in the instructions of the court with "I thought that your Honor's instructions were clear." This contention is without merit, as it appears that this statement was removed from its context where it merely related to an instruction which counsel for Nimzak himself had objected to, and has no bearing whatever on the clarity of or the acquiesence in the instructions upon which Baldi relies in his appeal.

Reversed with instructions to grant a new trial.