Anthony W. METTS, Appellant

v.

UNITED STATES, Appellee.

Nos. 97–CF–271, 03–CO–849.

District of Columbia Court of Appeals.

Argued March 10, 2005.
Decided June 16, 2005.

Montague A. Buck, Washington, DC, appointed by the Court, for appellant.

John C. Einstman, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney, and John R. Fisher, Thomas J. Tourish, Jr., and Linda Otani McKinney, Assistant

United States Attorneys, were on the brief, for appellee.

Before SCHWELB and GLICKMAN, Associate Judges, and DUNCAN–PETERS, Associate Judge of the Superior Court of the District of Columbia.[*]

DUNCAN–PETERS, Associate Judge, Superior Court.

On November 25, 1996, Anthony W. Metts was convicted by a jury of one count each of assault with a dangerous weapon,[1] aggravated assault while armed,[2] possession of a firearm during a crime of violence,[3] and carrying a pistol without a license.[4] On January 22, 1997, he was subsequently sentenced to two 8–to–24–year terms, a 5–to–15–year term, and a 3⅓–to–10 year term, all to be served concurrently. In a *pro se* motion to the trial court dated April 17, 1998, Mr. Metts alleged ineffective assistance of trial counsel and requested a hearing under District of Columbia Code § 23–110.[5] A new attorney appointed by the trial court subsequently filed a supplement to that motion, and an amendment to the supplement.[6] In two separate Orders, the trial court denied Mr. Metts's § 23–110 motion. The second Order was issued only after several extensions of time were granted to permit Mr. Metts time to submit affidavits in support of his motion. Mr. Metts appeals his four convictions along with the trial court's denial of his § 23–110 motion. For the reasons that follow, we affirm.

I. Evidence At Trial

At Mr. Metts's trial, the prosecution presented evidence that on April 11, 1996, Lawrence Baylor and Billy Morton entered Mr. Metts's place of work, "Big Man's Barbershop." At the time, Mr. Baylor was romantically involved with Mr. Metts's ex-wife, Natalie Bolling. When Mr. Baylor and Mr. Metts began to argue about what Mr. Baylor regarded as Mr. Metts's harassment of Ms. Bolling, the owner of the barbershop told them to leave. Mr. Baylor then exited the shop. Mr. Metts walked to the back of the shop, retrieved his jacket, and then exited as well.[7] Mr. Morton followed Mr. Metts onto the sidewalk outside.

Once outside, Mr. Baylor and Mr. Metts continued to argue, with Mr. Baylor telling Mr. Metts to stop harassing Ms. Bolling, and Mr. Metts responding that Mr. Baylor could not tell Mr. Metts what to do. Mr. Metts pulled a handgun out of his jacket and fired one round into Mr. Baylor's stomach. After being shot, Mr. Baylor ran behind a car, and Mr. Metts fired another shot, which passed through a window but did not hit Mr. Baylor. Although wounded, Mr. Baylor ran down the middle of the street, jumped on the hood of a

---

[*] Sitting by designation pursuant to D.C.Code § 11–707(a) (2001).

1. *See* D.C.Code § 22–502 (1981), recodified at D.C.Code § 22–402 (2001). The jury found Mr. Metts guilty of this crime as a lesser included offense of assault with intent to kill while armed.

2. *See* D.C.Code § 22–504.1 (1981), recodified at D.C.Code § 22–404.01 (2001).

3. *See* D.C.Code § 22–3204(b) (1981), recodified at D.C.Code § 22–4504(b) (2001).

4. *See* D.C.Code § 22–3204(a) (1981), D.C.Code § 22–4504(a) (2001).

5. All future statutory references are to the District of Columbia Code.

6. This same attorney, Montague A. Buck, is representing Mr. Metts on appeal.

7. Mr. Metts acknowledged during his testimony that he retrieved a green windbreaker from the back area of the barbershop before following Mr. Baylor outside.

passing car, and was carried from the scene. As Mr. Baylor ran down the street, Mr. Metts fired two more shots, neither of which hit Mr. Baylor. After Mr. Baylor left the area on the hood of the passing car, Mr. Metts drove away in a separate car.

In support of its contention that Mr. Metts shot Mr. Baylor, the government presented the testimony of the following witnesses: (1) Ms. Bolling, who testified that Mr. Metts had threatened and harassed her after their relationship soured, and that "he wasn't willing to accept the fact that I was with someone else"; (2) Mr. Morton, who was standing "knee close" to Mr. Metts and Mr. Baylor when Mr. Metts pulled a pistol from his jacket and shot Mr. Baylor in the abdomen; (3) Mr. Baylor, who was standing three to four feet away from Mr. Metts when Mr. Metts shot him; (4) Cornell Hill, Sr., who was standing in front of his house, situated "approximately a hundred, 150 feet" from Big Man's Barber Shop, when he observed the shooting, wrote down the license plate number of the car in which the shooter drove away from the scene, and provided this tag number to the police;[8] (5) Cornell Hill, Jr., Mr. Hill, Sr.'s son, who also was outside the Hill residence, and saw "the barber reach in the waist and pull something out

and shoot the heavy set guy, Mr. Baylor";[9] (6) Tyrone Hill, the brother of Cornell Hill, Sr., who heard shots on the day in question and, from the vantage point of the Hill residence, observed Mr. Metts chasing after Mr. Baylor with "his arm or hand extended like he had something in it"; and (7) John Belmar, a friend of the Hill family, who, also from the vantage point of the Hill residence, observed Mr. Metts shooting a heavyset man, then chasing him down the street.[10]

Mr. Metts testified at trial that he did not have a handgun in his possession on April 11, 1996, and that after he stepped out of the barbershop Mr. Baylor instructed Mr. Morton to shoot Mr. Metts.[11] Upon hearing this, he pushed Mr. Baylor and ran away. As he ran, he heard one gunshot.

## II.  D.C.Code § 23–110 Motion [12]

In his *pro se* Motion to Vacate Sentence and Set Aside Conviction, filed with the trial court, Mr. Metts argued that his trial counsel was ineffective because he: (1) neglected to request that the trial Court instruct the jury not to discuss the case during breaks; (2) failed to inform Mr. Metts about a plea offer; (3) failed to interview and/or call parole officer Michael Johnson as a witness; (4) failed to inter-

8.  Mr. Hill, Sr. had seen "[t]he guy with the pistol"—whom he identified as Mr. Metts— "four or five times" before "[i]n the barber shop cutting hair."

9.  Mr. Hill, Jr. recognized "the barber" from visiting Big Man's Barber Shop earlier in the day on April 11, 1996, and identified Mr. Metts as that same barber.

10.  In addition, the government presented the corroborating evidence of Metropolitan Police Department Officers Joseph Lonoe, Gerthaline Pollock, and Larry Johnson.

11.  In his trial testimony, Mr. Metts referred to Mr. Morton both as Billy Ray Morrison and "Mr. Morton." Mr. Metts clarified that he

was referring to the person who had testified earlier in the trial, whose name is Billy R. Morton.

12.  Under D.C.Code § 23–110, a prisoner may move the court to vacate, set aside, or correct his sentence on various grounds. In response to such a motion, the court may conduct a hearing in order to "determine the issues, and make findings of fact and conclusions of law with respect thereto." *See* D.C.Code § 23–110(a), (c) (2001). The term " § 23–110 hearing" as used herein refers to an evidentiary hearing at which witnesses would testify.

view and/or call Shirley Burnett as a witness; (5) failed to call Anthony Pryor as a witness; [13] (6) failed to move with sufficient zeal for a mistrial after Ms. Bolling, while testifying, made reference to Mr. Metts having been in prison; and (7) failed to present available and favorable character testimony on Mr. Metts's behalf at trial. Mr. Metts attached written statements from Raymond Reid, Rashida Bell, and Phyllis Metts to the supplement to his motion. In an amendment to the supplement, Mr. Metts asserted that, in addition to presenting the above-named witnesses at a D.C.Code § 23–110 evidentiary hearing, he would show that his trial counsel's poor health prejudiced his defense.

In her November 15, 2001 Order, the trial judge denied most of Mr. Metts's claims, but granted him additional time to obtain affidavits from potential witnesses he had named in support of his request for a § 23–110 hearing on his ineffective assistance of counsel claim. In an Order dated July 10, 2003, the trial judge denied Mr. Metts's § 23–110 motion, on grounds that, despite four extensions of time and the appointment of a "Court Certified Investigator," Mr. Metts had produced only one affidavit from his five prospective witnesses, which affidavit did not support his claim, and presented no "other credible evidence" warranting a hearing.

On appeal, Mr. Metts argues that the trial court erred: (1) by refusing to declare a mistrial, and by giving the jury an inadequate curative instruction, after Ms. Bolling stated during her testimony that Mr. Metts had been in prison; and (2) by declining to hold the requested evidentiary hearing and denying Mr. Metts's § 23–110 motion.

### III. Motion for Mistrial and Curative Instruction

Mr. Metts requested a mistrial after Ms. Bolling gave the following testimony at trial:

Q: And why did you believe that it wasn't so much about your daughter but more about you and Mr. Metts?

A: Basically because of the statements that he made. That particular day when—of the first visitation, the mutual consent to visitation with my daughter, after all of that had taken place and I had eventually—he had eventually dropped my daughter off later on that evening, he told [sic] on the phone that he was going to make me pay for having him to stay in prison as long as he did.[14]

■ After conferring with counsel at the bench, the trial judge denied defense counsel's request for a mistrial, and instead gave the following curative instruction to the jury:

THE COURT: Ladies and gentlemen, in the course of Ms. Bolling's testimony just now she made some reference to Mr. Metts' being in prison. I have absolutely no idea what she is talking about.

But I want to say to you, ladies and gentlemen, that that bears absolutely

---

13. In his *pro se* motion, Mr. Metts referred to Mr. Pryor as Mr. Price. The supplement to his *pro se* motion states that the correct last name for this individual is Pryor.

14. Prior to Ms. Bolling's testimony, the trial judge had denied the government's request that the court admit this specific testimony. Although she denied defense counsel's request for a mistrial, the trial judge recognized the egregiousness of Ms. Bolling's impropriety. Before issuing the curative instruction to the jury, the trial judge told counsel at the bench, "I reserve ruling. I may well have to declare a mistrial. I am furious. I am almost beyond comment."

no relationship to any of the issues that are before you in this case.

And so I'm going to instruct you whatever it was to simply put it out of your mind.

■ "[W]e will reverse the trial court's denial of a motion for a mistrial only if it appears irrational, unreasonable, or so extreme that failure to reverse would result in a miscarriage of justice." *Coleman v. United States*, 779 A.2d 297, 302 (D.C. 2001) (citation and internal quotation marks omitted). Factors to be considered in assessing the degree of prejudice suffered by Mr. Metts as a result of Ms. Bolling's remark include "the gravity of [her inappropriate disclosure], the relative strength of the government's case, the centrality of the issue affected, and any mitigating actions taken by the court." *See id.*

Mr. Metts argues that "Ms. Bolling's statement was very specific and needed [a] more definitive curative instruction than the one given." We note as a preliminary matter that Mr. Metts stated no objection to the form of the curative instruction at trial. Accordingly, we could only fault the wording of the instruction if we were to find "plain error" in it. *See* Super. Ct. Crim. R. 30; *Bates v. United States*, 834 A.2d 85, 92 (D.C.2003).

We find no such error. The trial judge's instruction that the jury should put Ms. Bolling's remark "out of your mind" was "prompt, complete, persuasive, and to the point." *Peyton v. United States*, 709 A.2d 65, 72 (D.C.), *cert. denied*, 525 U.S. 854, 119 S.Ct. 134, 142 L.Ed.2d 108 (1998).

Accordingly, "we should not readily assume that the jury could not or would not follow it." *See id.* Because the instruction was succinct and unambiguous, and because "[t]he jury is presumed to follow the trial judge's instructions," we are satisfied that the instruction neutralized any prejudice from Ms. Bolling's remark. *See Coleman, supra*, at 303.

We note also the strength of the government's case in this matter, which included testimony from Ms. Bolling as to motive, and from Mr. Morton, Mr. Baylor, and four eyewitnesses as to Mr. Metts's identity as the shooter. In contrast, the defense presented no witness to corroborate Mr. Metts's version of the events of April 11, 1996. Thus, we are unpersuaded by Mr. Metts's assertion that Ms. Bolling's disclosure was "probably one of the main reasons Mr. Metts took the stand in his own defense," thereby opening himself to cross-examination regarding his extensive criminal record. Had Mr. Metts not testified, no fact witness would have challenged the government's proposition that Mr. Metts shot Mr. Baylor.

Because the trial court gave an effective curative instruction to the jury following Ms. Bolling's remark, we find nothing "irrational, unreasonable, or ... extreme" in the trial court's denial of Mr. Metts's request for a mistrial. *See Coleman, supra*, at 302.[15] Accordingly, we lack any basis for reversing this decision.

IV. Trial Court's Denial of Mr. Metts's § 23–110 Motion

■ "We continue to adhere to the presumption that when a § 23–110 motion is

---

15. In *Coleman*, the defendant was tried for felony malicious destruction of property after setting fire to his father's house. The defendant's sister testified that she became upset with her brother "because he set fires before in our house." *See id.* at 300. We held that "the trial court was obliged to acquiesce to the demand of defense counsel for an immediate instruction with respect to [this] inadmissible evidence," but did not hold that a mistrial was required. *See id.* at 306. This ruling, involving a far more prejudicial statement than that which is at issue here, further supports our holding that the trial judge committed no error in refusing to declare a mistrial after Ms. Bolling made the improper remark.

filed, the trial court should conduct a hearing on the motion." *Lopez v. United States,* 801 A.2d 39, 42 (D.C.2002). At the same time, we recognize that "no hearing is required where defendant's motion consists of (1) vague and conclusory allegations, (2) palpably incredible claims, or (3) allegations that would merit no relief even if true." *See id.* "We review the trial judge's denial, without a hearing, of [Mr. Metts's] motion pursuant to D.C.Code § 23–110, for abuse of discretion." *Alston v. United States,* 838 A.2d 320, 324 (D.C. 2003).

In support of his motion for a § 23–110 hearing on the question of whether he was denied effective assistance of counsel, Mr. Metts submitted: (1) an unsworn statement from Raymond Reid; (2) an unsworn statement from Rashida Bell; (3) an unsworn statement from Phyllis Metts; and (4) an affidavit from Anthony Pryor. Mr. Metts also argued that the prospective testimony of Shirley Burnett—from whom Mr. Metts offered no written statement—supported his request for a § 23–110 hearing.[16] In addition, Mr. Metts asserted that he was prejudiced by defense counsel's failure to inform him of a plea offer made by the government on November 13, 1996, and as a result of defense counsel's poor health.

## A. Prospective Witnesses

### 1. Raymond Reid

■ Mr. Reid's unsworn statement reads as follows:

On the behalf, [sic] of Mr. Metts concerning April 11, at 4:35 p.m. I drove to Mr. Metts [sic] job on 14th street, where they told me, he was now in a shop on Georgia Ave. in Big Man's Barber Shop. I went there with 5 clients, in my van, so Mr. Metts could cut their hair. When I pulled up, I saw a small green car parked in the bus zone. Three men got out of the car. A big dark skin [sic] man put a black gun under his shirt. I waited awhile, four (4) to six (6) minutes, later, the two other men came out [sic] the shop. The man with the leather coat was leaning on the car. The man in the white tee shirt ran toward Randolph Street. Mr. Metts and the other guy ran towards Shepherd Street. At the time I did not know whether anyone was shot because of the lack of blood on the street. That is why I didn't hang around. Later I found out that the guy in the leather coat was shot. Mr. Metts told me what was going on. Mr. Metts [sic] ex-wife [sic] boyfriend and the other men came to the shop to hurt him. I told Mr. Metts [sic] attorney everything that I saw that day in question. To my surprise I was not called to testify.

We agree with the trial court's conclusion that nothing in Mr. Reid's statement is exculpatory. It is particularly noteworthy that, while the statement appears to place Mr. Reid outside Big Man's Barber Shop from before the shooting took place until after Mr. Metts fled the scene, Mr. Reid does not claim to have seen or heard any confrontation on the sidewalk outside the barbershop, let alone any shooting. The trial court noted as much, observing, "the statement makes clear that Mr. Reid did not see the shooting of Mr. Baylor at all." Mr. Reid's statement might be read

---

16. In his original § 23–110 motion, Mr. Metts alleged that trial counsel rendered ineffective assistance by failing to interview or call as a witness Michael Johnson, Mr. Metts's former parole officer. In her July 10, 2003 Order, the trial judge stated: "[T]he defendant concedes that an affidavit from Mr. Johnson is unnecessary. It is clear that, without directly saying so, the defendant has concluded that Mr. Johnson's testimony would not be helpful." On appeal, Mr. Metts does not challenge this finding.

to suggest that the shooting took place inside the barbershop during the four to six minutes that the two men remained there. Yet such a reading conflicts with Mr. Metts's testimony that the shooting occurred on the sidewalk outside the barbershop. While we are mindful that "it would surely exalt form over substance to deny a hearing simply because" Mr. Reid's statement is not notarized, *Lanton v. United States*, 779 A.2d 895, 903 (D.C. 2001), this is not a concern here, because the substance of Mr. Reid's statement does not support Mr. Metts's version of the shooting.

In *Lanton*, we noted that the trial court's denial of Mr. Lanton's § 23–110 motion "might have been appropriate, if the trial judge had given Lanton a specified brief period to present his allegations and the allegations of his witnesses in affidavit form, and if Lanton had failed to comply." *See id.* at 904 n. 10. In this case, the trial judge granted Mr. Metts approximately one year to present an affidavit from Mr. Reid.[17] In addition, she warned Mr. Metts when she granted the fourth extension that she would "look with careful scrutiny upon any further claims of good cause for an extension." Thus, Mr. Metts had ample notice that, with respect to obtaining affidavits in support of his motion, time was of the essence.

The trial judge appropriately balanced the presumption in favor of holding a § 23–110 hearing against the flimsiness of Mr. Reid's unsworn statement by granting Mr. Metts additional time in which to obtain an affidavit or "other credible proffer" from Mr. Reid clarifying what he witnessed on April 11, 1996. Given Mr. Metts's failure to produce any such additional evidence, we discern no abuse of discretion in the trial judge's ruling on this point.

2. Rashida Bell

Ms. Bell's statement reads as follows:

My name is Rashida Bell, this statement is an account of the events that I saw on April 11th, 1996 around 4:30 or so, where I was waiting at Big Man's Barber Shop. While waiting[,] three men entered the shop inquiring about the price of a haircut and then made a remark ... Words were exchanged between Mr. Metts and a big brown skin [sic] guy wearing a leather jacket. The men were asked to take the disturbance outside. I went to the door to look out because of the loud talking. I saw the guy in a white tee shirt pull a gun out and start shooting. I saw Mr. Metts ducking and running while shots still rang out. Someone else was shooting but I did not know anyone was hit until later. I told Mr. Metts [sic] attorney everything that I saw that day in question.

We find no error in the trial judge's conclusion that this undated, unsigned, and unsworn statement is not sufficiently credible to require that a § 23–110 hearing be held. As the trial judge noted, the statement conflicts with Mr. Metts's assertions that two men entered the barbershop prior to the confrontation, and "does not indicate that Ms. Bell (who seems to have been inside the barbershop the entire time) was in a position to see what the defendant was doing." In addition, Ms. Bell makes no reference to Mr. Metts retrieving his jack-

17. The trial court initially set January 15, 2002, as the deadline by which Mr. Metts was to have submitted affidavits from his proposed witnesses indicating the testimony each would offer at a § 23–110 hearing. Upon Mr. Metts's various requests, this deadline was extended first until March 1, 2002, then until April 2, 2002, then again until September 10, 2002, and finally until December 10, 2002.

et from the back room, even though Mr. Metts acknowledged doing so, and her version of the events differs markedly from that offered in Mr. Reid's statement.

Despite these shortcomings in Ms. Bell's statement, here again, the trial judge granted Mr. Metts ample time, specifying a final deadline of December 10, 2002, to obtain a sworn statement or other credible proffer from Ms. Bell clarifying what she witnessed on April 11, 1996. Mr. Metts failed to obtain such a statement, despite Ms. Bell's apparent awareness of his investigator's efforts to meet with her. Accordingly, we find no abuse of discretion in the trial judge's conclusion that no § 23–110 hearing was required to determine whether Mr. Metts's trial counsel was ineffective in failing to call Ms. Bell as a trial witness.

### 3. Phyllis Metts

Ms. Metts's unsworn statement reads as follows:

> To Whom it may concern:
>
> I Ms. Phyllis Metts was sitting in headlines hair dresser on April 10, 1996, when Jackie Michaels call [sic] to my attention that two men were chasing my brother Anthony Metts around a van, and they both had guns in [their] hands, and when I got up to look out the window I heard shot [sic] so everybody start[ed] ducking[.] When I got up and ran outside I saw Laurence Baylor (Pee Wee) riding on somebody['s] car down Geo. Ave. I never saw my brother until [later] that night.
>
> I told Mr. Shorter this when all this happen[ed].
>
> 742–4032 (W)
>
> 722–0414 (H)
>
> Ms. P. Metts

In her November 15, 2001 Order, the trial judge held that Mr. Metts "cannot show that the failure of trial counsel to call Ms. Metts caused him prejudice." There is ample evidentiary basis for this finding.

As a preliminary matter, Ms. Metts's statement refers to events that occurred on April 10, not April 11, 1996. Even assuming this was merely an error as to the date, the trial judge correctly noted that, except for the description of Mr. Baylor riding on someone's car down Georgia Avenue, the statement consists of inadmissible hearsay. The trial judge also noted Mr. Metts's inexplicable silence as to whether his "trial counsel should have called Jackie Michaels, the person who purportedly actually saw the events that she is alleged to have reported to Ms. Metts." In any case, Mr. Metts never requested that the trial judge reconsider this part of her November 15, 2001 Order, nor did he attempt to offer a more credible statement from Ms. Metts, even though he had from November 15, 2001 until the trial judge's final deadline, December 10, 2002, to do so. For these reasons, we cannot conclude that a § 23–110 hearing was required to determine whether Mr. Metts's trial counsel was ineffective in failing to call Ms. Metts as a trial witness.

### 4. Anthony Pryor

Mr. Pryor's affidavit, in relevant part, reads as follows:

> During the time of this incident, I was supposed to be a witness for Mr. Anthony Metts. Mr. Metts and I had the same lawyer, Mr. John Shorter.
>
> Mr. Metts told Mr. Shorter during a legal visit at the D.C. jail, that I was a witness for his behalf. I was present during the time of this conversation, when he explained to Mr. Shorter that I was a witness.

This affidavit provides no support for Mr. Metts's claim on appeal that Mr. Pryor's "testimony corroborates that

someone else rather than defendant Mr. Metts did the shooting." The affidavit merely states that Mr. Metts told his attorney that Mr. Pryor was a witness and offers no hint of what, if anything of relevance, Mr. Pryor witnessed on April 11, 1996. Mr. Pryor's affidavit also fails to describe how and why a conflict arose as a result of Mr. Metts's trial counsel's representation of Mr. Metts and Mr. Pryor.[18] Thus, here again, we discern no abuse of discretion in the trial judge's conclusion that a § 23–110 hearing was not required based on Mr. Pryor's affidavit.

### 5. Shirley Burnett

■ Finally, Mr. Metts asserts that Ms. Burnett could testify "that she was an eyewitness to the shooting [and] saw someone other than defendant Metts with a gun chasing defendant Metts." Mr. Metts has offered no written statement from Ms. Burnett, however, and as the trial judge noted, "has not even provided any credible evidence that Ms. Burnett even exists." We agree with the trial judge's conclusion that Mr. Metts's unsupported characterization of Ms. Burnett's prospective testimony does not amount to a "credible proffer" warranting a § 23–110 hearing. *See Lanton, supra,* at 902.

Recapitulating, we find no error in the trial judge's finding that the statements of Mr. Reid and Ms. Bell are vague, incomplete, and inconsistent with each other, and with Mr. Metts's testimony, as to key details regarding the events of April 11, 1996. Ms. Metts's statement, other than its reference to Mr. Baylor jumping onto a car, consists of inadmissible hearsay. Mr.

Pryor's affidavit provides no information regarding what Mr. Pryor witnessed on April 11, 1996, and Mr. Metts's assertions regarding Ms. Burnett's testimony are not supported by any written statement. The trial judge, recognizing that an additional credible proffer from one or more of these prospective witnesses *might* warrant a § 23–110 hearing, granted Mr. Metts a generous amount of time in which to present such evidence. Inasmuch as Mr. Metts failed to do so, he also failed to establish a reasonable probability that a § 23–110 hearing would result in a finding that his trial counsel was deficient. *See Ready v. United States,* 620 A.2d 233, 234 (D.C.1993); *Lanton, supra,* at 905. Accordingly, the trial judge did not abuse her discretion in refusing to conduct a § 23–110 hearing based on the statements of these prospective witnesses.

### 6. Availability of Discovery Procedures Under Rule 6 of the Rules Governing Proceedings Under D.C.Code § 23–110

On appeal, during oral argument, Mr. Metts's counsel asserted that a § 23–110 hearing was necessary to compel reluctant witnesses to testify. The government countered that if Mr. Metts's counsel and investigator were encountering resistance from any of these prospective witnesses, they could have sought the trial judge's approval to conduct discovery, in accordance with Rule 6 of the Rules Governing Proceedings Under D.C.Code § 23–110. That Rule was in effect throughout the period during which Mr. Metts sought

---

**18.** Nothing in the affidavit supports the proposition that Mr. Metts's trial counsel declined to call Mr. Pryor as a witness due to a conflict of interest between counsel's two clients. As noted by the trial judge, the mere possibility that trial counsel had a conflict of interest "is insufficient to impugn a criminal conviction."

*Derrington v. United States,* 681 A.2d 1125, 1133 (D.C.1996) (citation and internal quotation marks omitted). Rather, "appellant must be able to point to specific instances in the record to suggest an actual conflict or impairment of [his] interests." *See id.* (citation and internal quotation marks omitted).

deadline extensions in order to procure affidavits from his prospective witnesses.

In the course of numerous filings relating to his § 23–110 motion, Mr. Metts informed the trial judge that Ms. Bell and Mr. Reid were reluctant to provide affidavits on his behalf, and that attempts to reach Ms. Burnett and Mr. Pryor had been unsuccessful. In response, the trial judge granted Mr. Metts's requests for extensions of the deadline by which he was required to file affidavits from these prospective witnesses, and for the appointment of a court-certified investigator. Mr. Metts never sought to overcome the difficulties he faced with respect to these witnesses, however, by seeking the trial judge's approval to conduct discovery under Rule 6. Nor, for that matter, did Mr. Metts ever argue to the trial judge that a § 23–110 hearing was necessary in order to compel the testimony of reluctant witnesses.[19]

We have held that a motions judge has discretion to authorize discovery in the context of a petition for a § 23–110 hearing. *See Johnson v. United States,* 616 A.2d 1216, 1235–37 (D.C.1992). Thus, no conflict exists between our precedent and Rule 6, and we are not faced with the situation that troubled the trial judge in *United States v. Arnold,* 133 Daily Wash. L. Rptr. 211 (D.C.Super.Ct. October 27, 2004) (concluding that, at the time it was adopted, Rule 9(a) of the Rules Governing Proceedings Under D.C.Code § 23–110 "conflicted with existing case law and, therefore, was not appropriately adopted by the Board of Judges"). Had Mr. Metts made a Rule 6 request and the trial court denied it, we would review such a denial for abuse of discretion. In this case, we are of course unable to find an abuse of

discretion by the trial judge based on an argument that was never presented to her.

▇▇▇ In any case, we reject the proposition that even if a motion for a § 23–110 hearing consists of vague, conclusory, incredible, or otherwise meritless allegations, such a hearing is nevertheless warranted where prospective witnesses have refused to provide supporting affidavits. The determination of whether to hold a § 23–110 hearing hinges on the weight and credibility of the defendant's allegations, not the reluctance of potential witnesses or elusiveness of possible evidence. *See Lopez, supra,* 801 A.2d at 42. Where a defendant encounters difficulty in collecting evidence to support his request for a § 23–110 hearing, Rule 6 provides an avenue of relief. Having failed to invoke Rule 6 throughout the lengthy period during which his motion for a § 23–110 hearing was pending, Mr. Metts cannot now prevail on the argument that such a hearing was necessary based on the very circumstances Rule 6 is designed to address.

B. Trial Counsel's Communication with Mr. Metts Regarding Maximum Penalty and Final Plea Offer

▇▇▇ On November 13, 1996, the trial judge called a bench conference upon learning that Mr. Metts had suffered a seizure and would be unable to attend trial that day. After discussing with counsel what she would say to the jury regarding cancellation of trial for the day, the trial judge asked, "What is the latest plea offer here?" Government counsel responded by outlining two plea options, then stated, "both of those I believe were presented to Mr. Metts and the response was that he wanted to go to trial." Government counsel added, "I am willing at this point to

---

**19.** In his December 2002 filing, Mr. Metts represented that Mr. Reid had moved and left no forwarding address, and that attempts to locate him through "many other sources" were unsuccessful. Thus, as to Mr. Reid, a hearing would not have served any useful purpose.

renew that same offer, Your Honor, but I don't know that we'd get any better response."

In his motion for a § 23–110 hearing, Mr. Metts asserted that his counsel never informed him that the government had offered to renew its plea offer on November 13, 1996. Mr. Metts asserted further that, had his trial counsel informed him of this offer, he "would have reviewed it."

In her November 15, 2001 Order, the trial court found that Mr. Metts's allegations with respect to the government's November 13, 1996 plea offer renewal did not provide a basis for holding a § 23–110 hearing on Mr. Metts's ineffective assistance of counsel claim, because

> defendant has alleged no prejudice. Far from asserting that he would have accepted this plea offer during the midst of trial, despite rejecting it earlier, defendant merely alleges that he would have "reviewed" it. Indeed, since defendant asserts his innocence to this day, the court would have been unable to accept his guilty plea.

We discern no error in this ruling. First, the trial judge properly focused on the prejudice element of the ineffective assistance of counsel standard, "since without prejudice there can be no ineffective assistance of counsel." *See Ready, supra,* at 234, quoting *Griffin v. United States,* 598 A.2d 1174, 1176 (D.C.1991). Second,

since Mr. Metts previously had rejected the same plea offer—after having had an opportunity to review it—his mere assertion that he would have "reviewed" it again is not sufficient to show that he would have changed his mind mid-trial and accepted the offer. Third, Mr. Metts asserted his innocence not only throughout his trial, but elsewhere in his post-trial motion for a § 23–110 hearing, which focused in large part on the purportedly exculpatory testimony of the prospective witnesses discussed above. While inconsistencies of this sort do not necessarily doom a § 23–110 motion in every case, *see Jones v. United States,* 743 A.2d 1222, 1225 (D.C. 2000), the trial court correctly determined that it could not have accepted a guilty plea from Mr. Metts so long as he continued to assert his innocence. At any rate, as noted, Mr. Metts never claimed in his § 23–110 motion that he would have accepted the November 13, 1996 plea offer. Thus, he failed to assert that he was prejudiced by his counsel's alleged errors, and thereby failed to state a cognizable claim for ineffective assistance of counsel.[20] For these reasons, we discern no abuse of discretion in the trial court's ruling on this point.[21]

## C.　Health of Trial Counsel

■　Finally, Mr. Metts asserted in his § 23–110 motion that his trial counsel's

---

20. On appeal, Mr. Metts also asserts that, under Superior Court Criminal Rule 43, his presence was required at the November 13, 1996 hearing. As the government notes, however, under Rule 43(c)(3), "a defendant need not be present ... [w]hen the proceeding involves only a conference or hearing upon a question of law." *See* Super. Ct.Crim. R. 43(c)(3) (2005) (last amended July 1, 1996).

21. For the first time in this litigation and only in his *pro se* Supplemental Appeal Brief from the Denial of D.C.Code § 23–110 Relief, Mr. Metts asserted that, had he known of the November 13, 1996 plea offer and his sen-

tencing exposure if convicted at trial, he "would have accepted the plea bargain instead of risking a lengthy mandatory minimum and maximum sentence." Of course, since Mr. Metts never made this argument before the trial judge, we cannot fault the trial judge's decision on the basis of this contention. In any event, Mr. Metts's assertion that he would have accepted the plea offer is made in an unsigned, unsworn addendum to his *Pro Se* Supplemental Appeal Brief, and is not accompanied by an assertion that his trial counsel failed to advise him of the difference between the sentence he faced if he agreed to a plea agreement and the sentence he faced if

health was so poor leading up to and during the trial that his counsel, "at times, failed to recognize him," and that "sometime[s] d[ur]ing the course of the trial he [would] forget my name [and] f[a]il to tell me things that [were] going on in my trial."

We defer to the trial judge's finding, based on her observation of Mr. Metts's trial counsel on fourteen separate dates, that "[t]here was nothing in his behavior that suggested that he was ill or that he was not fully capable of providing competent representation to the defendant." Moreover, as discussed above, we find no error in the trial judge's determination that Mr. Metts has offered no credible support for his contention that his trial counsel was ineffective in failing to call the prospective witnesses named in Mr. Metts's § 23–110 filings. Mr. Metts has not pointed to any evidence in the record suggesting that his trial counsel was too ill to render competent performance, and the trial transcript as a whole belies that contention. In sum, the trial judge did not abuse her discretion in denying Mr. Metts a hearing on his claim regarding his trial counsel's health.

For the foregoing reasons, the judgment of conviction appealed from hereby as well as the trial judge's denial of Mr. Metts's § 23–110 motion and his request for an evidentiary hearing are affirmed.

*So Ordered.*

convicted at trial. These substantive factors—in addition to Mr. Metts's procedural lapses—distinguish the instant case from *Jones*, in which we held that a § 23–110 hearing was required where Mr. Jones claimed in his § 23–110 motion "that his trial counsel never informed him that, by proceeding to trial instead of accepting a plea agreement on the table, he faced mandatory minimum sentences significantly longer than the sentence associated with the plea offer," and where Mr. Jones further stated in an affidavit accompanying his § 23–110 motion that "he would have in fact pled guilty but for his counsel's omission." *See Jones, supra,* at 1224, 1225.